**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GEORGIOU STUDIO, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> BOULEVARD INVEST, LLC., a Delaware limited liability company d/b/a DESERT PASSAGE; AND DOES 1 through 10, inclusive, <br><br> Defendants. | 2:07-cv-00997-RCJ-LRL |
| BOULEVARD INVEST, LLC., a Delaware limited liability company, <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> RELATED URBAN MANAGEMENT COMPANY, LLC, a Delaware limited liability corporation, <br><br> Third-Party Defendant. | **AMENDED ORDER** |

**I. INTRODUCTION**

This lawsuit arises out of Plaintiff Georgiou Studio, Inc.'s ("Georgiou") claim against Defendant Boulevard Invest, LLC. ("Boulevard") for breach of contract, fraud and deceit, negligent representation, and abuse of process in regards to Boulevard's ejection of Georgiou and subsequent denial of a lease agreement between the two parties. Boulevard then filed a third party complaint

against their former property management company, Related Urban Management Company, LLC ("Related"). Now before the Court is Boulevard's Motion for Leave to File Second Amended Answer to Complaint and Third Party Complaint pursuant to Rule 15(a) and Boulevard's Motion for Summary Judgment pursuant to Rule 56. (#89, 91). Boulevard argues in its Motion to Amend that amendments are needed due to previously adjudicated issues. Additionally, Defendant wishes to add claims against Related and additional Third Party Defendants Pohlen and Donovan on the grounds that the claims were inadvertently omitted or not yet discovered by Defendant's prior counsel. In its Motion for Summary Judgment, Defendant argues that there is no genuine issue of material fact supporting Plaintiff's claims.

The Court has considered Plaintiff's Motion and the pleadings on file on behalf of all parties. IT IS HEREBY ORDERED that Boulevard's Motions to Amend (#71, 89) are DENIED and Boulevard's Motion for Summary Judgement (#91) is GRANTED. Furthermore, Georgiou's Motion to Strike (#97) is DENIED.

## II. FACTS

Boulevard owns and operates a shopping center known as the Miracle Mile Shops (previously known as Dessert Passage) located at 3663 Las Vegas Blvd., Las Vegas, NV 89109. In February 2005, Boulevard entered into a Property Management and Leasing Agreement with Related, wherein Related agreed to represent Boulevard as its property manager and leasing agent with regards to the Miracle Mile Shops. Boulevard specifically reserved the authority and discretion to make the final decision on whether or not to enter into any lease. During the relevant times to this lawsuit Related employed proposed Third Party Defendant Kimberly Pohlen ("Pohlen") as its leasing agent. After failing to acquire the appropriate permits and licenses regarding their property management, in July 2006, Related hired proposed Third Party Defendant Vic Donovan and Vic Donovan Real Estate Services, Inc. (collectively "Donovan") to monitor Related's leasing transactions and bring them into compliance with appropriate licenses and permits. Throughout the

period during which Related was not properly licensed it collected the fees and rent payments from Boulevard's leases.

In 2002, Boulevard's predecessor-in-interest entered into a lease agreement with Georgiou for space in the Miracle Mile Shops.  Starting in 2005 Georgiou began to receive notices of default.  Boulevard alleges that Georgiou was late in paying rent throughout the course of their tenancy.  Georgiou alleges that it received these notices for over a year but was directed by Boulevard's management (presumably Related) that they were not in fact in default and the notices were to maintain the accounting as though there was a ten year lease in effect (though this was not true).  After receiving a notice of default in early July 2006, Georgiou was evicted by Boulevard and locked out of the premises on July 28, 2006.  Boulevard and Georgiou entered into an agreement settling their dispute regarding the outstanding rent.

Subsequent to the eviction Georgiou and Related, through the actions of Pohlen, began discussions with Georgiou about leasing another space in the Miracle Mile Shops.  Boulevard alleges that these discussions were in furtherance of Pohlen and Related's interest in obtaining commission (both at the Miracle Mile location and another location in Phoenix) and at no time was Boulevard interested in retaining Georgiou again as a tenant.  During this time Pohlen communicated on behalf of Related that "Ownership" had agreed to the "economics discussed" and sent letters of intent to Georgiou regarding the agreement to lease space.  Included on the letter of intent sent to Georgiou was the provision that "neither party shall be bound unless and until a mutually agreeable lease is executed and delivered by both parties."  In January 2007, Georgiou made an agreement to an oral lease with Related and Pohlen to lease a location in the Miracle Mile Shops for ten years.  This oral agreement was confirmed in an email from Pohlen in which she relayed to Georgiou that "Ownership has approved the deal."  In March a lease was forwarded Georgiou, which they signed and sent back with a check for the first month's rent.  In April they were notified that Boulevard would not execute the lease.

In December 2007, Boulevard also terminated their agreement with Related on the grounds that Related had breached their contract in the events that gave rise to this dispute. Related was also added as a third-party defendant to this suit. In January 2009, summary judgment was granted in favor of Related against Boulevard on the matters of breach of contract, breach of implied covenant of good faith and fair dealing, indemnity and contribution, application of the economic loss doctrine, and fiduciary duty. (# 60, entered Jan. 22, 2009). The proposed Amended Complaint presently before this Court makes these additional claims against Related and proposed Third Party Defendant Pohlen: breach of contract by their failure to obtain the necessary licenses; gross negligence due to failure to obtain the necessary licenses, making fraudulent statements, and acting outside the scope of delegated authority; fraud due to Related's failing to refund all fees collected by Related as well as the payment for services from Boulevard; and conversion on the grounds that Related failed to return the monies held in trust in Boulevard's operational account. The claims against proposed Third Party Defendant Donovan are based on Boulevard's allegations that Donovan was negligent in its duties to Related/Boulevard, and secondly, that Vic Donovan Real Estate Services, Inc. is the alter ego of Vic Donovan.

### III. DISCUSSION

**A.   Boulevard's Motion to Amend (#89).**

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED R. CIV. P. 15(a)(2). Whether an amendment to a pleading should be permitted is ordinarily a matter within the discretion of the trial court. *Caddy-Imler Creations, Inc. v. Caddy*, 299 F.2d 79, 84 (9th Cir. 1962). District courts are directed to apply this rule with "extreme liberality." *See, e.g., Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997). However, leave to amend is not absolute. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). Among the factors mitigating against allowing parties to amend their pleadings are undue

delay in litigation, prejudice to the opposing party, and futility for lack of merit. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A showing of the factors overcomes the presumption in favor of granting leave to amend. *See Eminence Capital, LLC. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### 1. Undue Delay

Boulevard contends that its Motion for Leave to Amend is, in sum, an attempt to add parties and claims it finds necessary to the litigation. The failure to include Pohlen and Donovan are attributed to oversight on the part of Boulevard's previous counsel or insufficient information to name them as parties. However the timing of this motion is significant as this Court has already issued an order granting Summary Judgment to Related regarding all but one of Boulevard's original claims against Related and denied Boulevard's Motion for Reconsideration less than ten months ago. As one court framed the issue, "delay may become undue when a movant has had previous opportunities to amend a complaint. *Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267. 273 (3rd Cir. 2001). In *Jackson* the Court stated that evaluation needs be made "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleadings." *Jackson*, 902 F.2d at 1388.

In the present case Boulevard has not sufficiently justified their delay in amending their complaint. The additional parties that Boulevard is attempting to include as third party defendants were not added due to some new information that they did not, or could not have known earlier in this litigation. This litigation has been ongoing for over two years. There is not articulated reason that Boulevard should not have known that they could or should include Pohlen and Donovan in the suit. Specifically, their delay in waiting until after the large majority of their claims were disposed of via summary judgment, suggests rather a wait and see approach, rather than discovery of new information. Discovery has now closed and trial is currently scheduled for September 22, 2009, less than six weeks from now. Additionally, Boulevard's new counsel has been in place for over ten

months. The basis for the additional claims against Related as well as the involvement by Pohlen and Donovan is not new information. Despite ample time to bring the claims against these parties and bring the additional parties they failed to do so in a timely manner warranting the denial of their Motion.

### 2. Unfair Prejudice

The factor of unfair prejudice was cited by the Ninth Circuit in *Jackson* as being the most significant factor in determining whether or not to grant leave to amend. *Jackson*, 902 F.2d at 1387. Where a party is relitigating issues previously decided on a new theory undue prejudice likely exists. *See id.*; *see also Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973) ("[T]o put [the Defendant] through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial."). A result that would not prejudice Related is difficult to foresee in this case. The new issues raised will require extra discovery, delaying the trial, as well as the likely cost of defending Pohlen as their employee acting within the scope of her employment. Additionally, Boulevard's new claims are in part an attempt to relitigate the claims that were already adjudicated pursuant to this Court's Summary Judgment Motion. The prejudice to Related, when viewed in light of the timing of Boulevard's motion is undue and thus contributes to denying Boulevard's Motion.

### 3. Futility for the lack of merit.

The third factor that mitigates against granting Boulevard's Motion is futility. As already pointed out, this Court granted Summary Judgment on Boulevard's claims of breach of contract, breach of implied covenant of good faith and fair dealing, indemnity and contribution, application of the economic loss doctrine, and fiduciary duty. The factual basis for their current claims is largely the same factual basis for the claims proposed against Related, Pohlen, and Donovan in the present Motion. Boulevard has failed to show that the amended claims are not futile. When coupled with the other factors which mitigate against allowing Boulevard leave to amend, the Court must

1  deny its Revised Motion for Leave to File Second Amended Answer to Complaint and Third Party
2  Complaint.

### B.     Boulevard's Motion for Summary Judgment (# 91).

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Id.* Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp.,* 477 U.S. at 323–24 (1986). Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Id.* at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

In a summary judgment posture, the Court must consider the parties' respective burdens. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.,* 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also, Celotex Corp.*, 477 U.S. at 324.

### 1. Breach of Contract

Boulevard's argument for summary judgment on the breach of contract claim is the affirmative defense that the agreement did not satisfy the Statute of Frauds. Nevada's Statute of Frauds regarding leases, N.R.S. 111.205, states:

> No estate or interest in lands, other than leases for a term not exceeding 1 year . . . shall be created, granted, assigned, surrendered or declared . . . , unless by act or operation of law, or by deed or conveyance, in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same or by his lawful agent thereunto authorized in writing.

Nev. Rev. Stat. § 111.205 (2008). The sufficiency of the writing memorializing an enforceable lease is therefore of critical importance. The determination of sufficiency of a writing is a matter of law. *Ray's Motor Lodge, Inc. v. Shatz*, 80 Nev. 114, 118, 390 P.2d 42, 44 (Nev. 1964). A writing need not provide all terms of the agreement so long as the essential terms and the substance of the agreement are present. *See Johnson v. Watson*, 70 Nev. 443, 447, 272 P.2d 580, 582 (1954). A "writing" may satisfy the statute even if it consists of separate writings. *Ray's Motor Lodge*, 80 Nev. at 118, 390 P.2d at 44. Even if one of the writings is not signed, or neither writing is sufficient in and of itself, the writings may be read together as part of a single transaction to satisfy the statute. *Id.*

In the present case, the parties have submitted exhibits which consist of writings which are insufficient to satisfy the statute of frauds. Specifically, the Court must look at whether the writings can be read together so as to sufficiently provide the substance of the agreement and that the writings were signed by the Boulevard or their agent. In support of their Motion, Boulevard relies on their assertion that Georgiou is trying to enforce an oral agreement, citing to Georgiou's Complaint, and that no contract was ever executed. (#91 at 7). Georgiou counters by referencing the remainder of the Complaint which states that the oral agreement was memorialized by the writings forwarded to Georgiou. (#97 at 9; First Amended Complaint ¶ 15, 19). Georgiou attempts to support its claim of a sufficient writing by proffering the following evidence: a copy of the email sent to Georgiou,

allegedly confirming the agreement by stating that "Ownership approved the deal" (#97, Ex. 4); a copy of a proposed lease (#97, Ex. 6–7); and a copy of Georgiou's check for the first month's rent which was never cashed by Boulevard (#97, Ex. 7). Previous communications made clear that there was no contract until execution by Boulevard. (#97, Ex. 9). Georgiou admits to being aware that there was no contract until Boulevard's execution of a lease. Without that material condition, the writings submitted cannot be held to constitute a contract. Accordingly, Georgiou's claim fails as a matter of law due to the Statute of Frauds.

**2.      Fraud and Deceit**

In Nevada, the tort of deceit is treated as the tort of fraudulent representation. *Scaffidi v. United Nissan*, 425 F.Supp.2d 1172, 1185 (D. Nev. 2005); *Pac. Maxon, Inc. v. Wilson*, 96 Nev. 867, 619 P.2d 816, 817 (1980). Therefore the Court will consider the elements of these claims as essentially the same. Nevada has defined the elements of false or fraudulent misrepresentation as:

> (1) A false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation.

*Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 447, 956 P.2d 1382, 1386 (1998); *see also Bulbman Inc. v. Nevada Bell*, 108 Nev. 105, 110-11, 825 P.2d 588, 592 (1992). Boulevard's argument for summary judgment on this count rests on the allegation that Georgiou did not experience any damages and that there is no evidence that Boulevard intended to induce Georgiou to act or not act.

Georgiou's claim for fraud and deceit rests on two sets of alleged misrepresentations: those made while it was a tenant regarding the "false" Tenant Estoppel Certificate and those regarding securing a new lease with Boulevard. Georgiou alleges that 1) Boulevard's agent made a false representation; 2) that Boulevard's agent knew that this was statement was false; 3) that Boulevard's agent intended to induce Georgiou not to act on the basis of its representation; and 4) that damage occurred to Georgiou due to its reliance on Boulevard's representations. Boulevard counters that

the settlement as to the rent owed establishes that there are no damages. (#91 at 8, Ex. 4). Georgiou's claim fails to show a basis for the claim that Boulevard intended to induce Georgiou's reliance or that they incurred any damages. Per the terms of their settlement they were only required to pay the amount of money they agreed that they owed. Georgiou fails to support their claim sufficiently to survive summary judgment as they have failed to show grounds that Boulevard intended to induce Georgiou's action or inaction, or that Georgiou suffered any damages from this alleged fraud.

### 3.     Negligent Misrepresentation

Nevada has adopted the definition of negligent misrepresentation as found in the Restatement (Second) of Torts § 552, which states:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Barmettler*, 114 Nev. at 449, 956 P.2d at 1387 (quoting Restatement (Second) of Torts § 552 (1977)). This definition can be reduced to the following elements: 1) a false statement; 2) the statement was made through a failure to exercise reasonable care; 3) the statement was made in the course of business or for pecuniary gain; 4) the statement was for the guidance of others in a business transaction; and 5) the injured party justifiably relied on their statement. Boulevard claims that Georgiou unjustifiably relied on any alleged misrepresentations by Boulevard's agent. Georgiou counters that the damages claimed were not incurred until the assurance that the deal was finalized by Boulevard's agent. However, Boulevard's contentions succeed because Georgiou did not have a basis for justifiable reliance. Georgiou knew there was no contract until execution by Boulevard, so any expenditures incurred, up until that point, were at their own risk.

### 4. Abuse of Process

The elements of a cause of action based on abuse of process are: "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879 (2002) (quoting *Posadas v. City of Reno*, 109 Nev. 448, 457, 851 P.2d 438, 444–45); *see also Kovacs v. Acosta*, 106 Nev. 57, 59, 787 P.2d 368, 369 (1990). "An ulterior purpose is any improper motive underlying the issuance of legal process." *Posadas*, 109 Nev. at 457, 851 P.2d at 445 (citing *Laxalt v. McClatchy*, 622 F.Supp. 737, 751 (D.Nev.1985)). Courts have found ulterior motives where a party brought a malpractice claim without any basis, in order to coerce the settlement of nuisance claim, and when a party attached a property in great excess of the debt in order to coerce payment. *Bull v. McCuskey*, 96 Nev. 706, 709, 615 P.2d 957, 960 (1980), *overruled in part on other grounds by Ace Truck v. Kahn*, 103 Nev. 503, 746 P.2d 132 (1987); *Nevada Credit Rating Bur. v. Williams*, 88 Nev. 601, 606, 503 P.2d 9, 12 (1972).

Boulevard alleges that Georgiou is "unable to even articulate a cognizable 'ulterior purpose.' This seems to be the case. Georgiou alleges that this cause of action is based on the Boulevard agent's provision of notices of default to Georgiou for the alleged ulterior motive of overreporting the amount of income from Georgiou. Georgiou asserts that during the time that it was receiving these notices the Boulevard repeatedly assured them that it would not act on the notices and that they were incorrect. Georgiou then contends that Boulevard willfully used these notices to evict it from the property. Georgiou fails to produce sufficient evidence, however, to support a claim on this basis. There is no evidence of an ulterior purpose or the use of a legal process other than to evict a tenant for failure to pay rent. Georgiou's settlement with Boulevard evidences that they did owe past rent due, vindicating the eviction. Georgiou's claim fails as a matter of law, as they have not presented evidence sufficient to sustain a claim under this cause of action.

## IV. CONCLUSION

The Court has considered Plaintiff's Motion and the pleadings on file on behalf of all parties. IT IS HEREBY ORDERED that Boulevard's Motions to Amend (#71, 89) are DENIED and Boulevard's Motion for Summary Judgement (#91) is GRANTED. Furthermore, Georgiou's Motion to Strike (#97) is DENIED.

DATED: October 6, 2009

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE